**Helen HEMBREE, for and on behalf of Hoke F. HEMBREE, her incapacitated husband, Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

**No. Civ.A. 1:99CV1976O–DE.**

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 27, 2000.

Steven L. Beard, Marietta, GA, for plaintiff.

H. Sanders Carter, Jr., Carter & Ansley, Atlanta, GA, for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This civil action to recover disability benefits brought pursuant to the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. §§ 1001–1461, is currently before the court on the opposed motion for summary judgment of Defendant Provident Life and Accident Insurance Company. For the reasons set forth below, the motion for summary judgment is granted.

Helen Hembree ("Plaintiff") brings the instant action to recover disability benefits on behalf of her husband, Hoke Hembree ("Hembree"), whom she alleges is mentally incompetent. Hembree was formerly employed by Georgia Power Company where he received disability insurance coverage under a group policy issued by Provident Life And Accident Insurance Company ("Provident"). Both parties agree that the group policy at issue is part of an employee welfare benefit plan as defined by ERISA.

Provident terminated Hembree's disability benefits in January, 1989, stating that Hembree failed to establish proof of disability as required by the policy. This suit was filed in 1999.

Few records exist regarding Hembree's claim and the termination of benefits because Hembree's file was destroyed pursuant to Provident's seven-year records retention policy. However Plaintiff asserts that she has been able to "fairly reconstruct [Hembree's] medical history which would have been available to Defendant at all times while it was processing [Hembree's] disability claim and paying him benefits throughout most of the 1980's." [Pl. Response to Def.Mot. Summary Judgment at 8]. This has been done through discovery from the Georgia Power Company, Social Security, and Hembree's medical providers.

Hembree received long term disability benefits from Provident beginning in 1982 through and until January 31, 1989. The monthly benefit amounted to $365.31. There is no dispute that Hembree was disabled as defined by the policy during the years that he received the benefits.[1]

---

1. In order to receive benefits under the policy, one must be "unable to engage in business or occupation or to perform any work for compensation, gain or profit for which he is

Hembree's disability mainly involves severe and often debilitating back and neck pain. He has had several back surgeries, including an anterior cervical discectomy and fusions of his vertabrae at C5–6 and C6–7. Additionally, Hembree is afflicted with other medical problems including stomach ulcers, hypertension, and an atrial abnormality.

Provident requires that proof of continued disability be submitted by the attending physician setting forth fully the condition and its expected duration as a condition precedent to receiving disability payments every six months. [Policy, Claim Provisions, Def.Ex. 3]. Provident submits that Hembree failed to submit this proof of disability, and accordingly his benefits were terminated.

Through discovery from the Georgia Power Company, Provident obtained a letter that it had sent to Hembree, certified and return receipt requested, dated January 16, 1989, which chronicles the events that led up to the termination of Hembree's benefits. The letter reads:

> Your group plan provides that you must furnish Provident with a periodic report in writing from your attending physician or surgeon fully stating your condition and the probable duration of your disability. On September 7, October 19, and December 6, we wrote you requesting this proof of your continued disability.

> As of this date, we have not received the requested proof; therefore, we can only assume that you are no longer totally disabled as provided in your group plan, and your LTD claim has been closed accordingly. Your final LTD benefit check will represent benefits through January 31, 1989.

> There is an Employee Retirement Income Security Act of 1974 (ERISA) qualified plan, under which you have certain rights, including the right of appeal. If you disagree with our determination, you may submit a written request for reconsideration within 90 days from the date of this letter, accompanied by detailed documents or records from your physician in support of your appeal.

> If you have any questions regarding the above, please let us know.

[Def.Ex. 7]. A subsequent letter obtained from the Georgia Power Company dated January 26, 1989, sent to Hembree from Provident, certified and return receipt requested, shows that Provident did receive an attending physician statement for Hembree from Dr. Richardson. [Def.Ex. 8]. In the January 26, 1989, letter Provident informed Hembree that Dr. Richardson's letter indicated that he was "not totally disabled from any occupation and that [he] was to stay active and continue working." [*Id.*] Based on that language, Provident affirmed its earlier decision to discontinue Hembree's disability benefits in the January 26th letter. [*Id.*]

Prior to Provident's termination of disability benefits, Hembree had been approved for and awarded. Social Security disability benefits. He continues to receive these benefits. Provident had knowledge of the Social Security disability benefits, and thus Social Security's determination that Hembree was indeed disabled, when it terminated Hembree's benefits. Plaintiff contends that Provident knew this information because Provident was entitled to a credit for Social Security benefits received.

Following the termination of Provident's disability benefits in January, 1989, Provident asserts it received no further claim or communication from Hembree until April, 1999, when Hembree's attorney sought to reopen the claim and demanded that the benefits be paid from January 31, 1989 through January 20, 1998, the end of the maximum benefit period. Plaintiff brought this suit on behalf of her husband, Hoke F. Hembree, whom she alleges is mentally incompetent and unable to handle

reasonably fitted by education, training or experience." [Policy, Def.Ex. 3].

his affairs at times relevant to these proceedings. Plaintiff asserts that she handled all of Mr. Hembree's business and legal matters during the marriage but that the couple separated shortly before Hembree's benefits were terminated.[2] Plaintiff submits that she learned the disability benefits had been terminated upon reuniting with Hembree in 1998.[3] She inquired with the Georgia Power Company and Provident but was unsuccessful in learning why the benefits had been terminated.

On June 28, 1999, Plaintiff filed the instant action in the State Court of Fulton County. The action was removed to the United States District Court of the Northern District of Georgia on July 30, 1999 pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446. This court has federal question jurisdiction under 28 U.S.C. § 1331 as this action was filed under ERISA. Plaintiff has filed two claims against Provident: (1) a claim for benefits under the group policy pursuant to 29 U.S.C. § 1132(a)(1)(B); and (2) breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3).

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on the movant's motion, the court must view the evidence in a light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To prevail on its motion for summary judgment, the movant must show that the evidence is insufficient to

establish an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant makes a sufficient showing, then the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). If the evidence supporting the non-movant's claims is insufficient for a jury to return a verdict for the non-movant, or is "merely colorable" or "not significantly probative," then the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a verdict for the non-movant, then summary judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. 2505.

The court will first address the claim for benefits. Plaintiff seeks to recover disability benefits allegedly owed Mr. Hembree under the terms of the policy pursuant to 29 U.S.C. 1132(a)(1)(B).[4] Plaintiff argues that Provident's decision to terminate Hembree's benefits was wrongful and based on erroneous information. Plaintiff contends that Hembree was disabled as defined by the policy in January 1989 and remained so through the end of the maximum benefit period. Given the information Provident must have had concerning the medical condition of Hembree in January 1989, Plaintiff submits that Provident wrongfully relied on the following portion of Dr. Richardson's statement in concluding that Hembree was no longer disabled

---

**2.** Deposition testimony shows, however, that she did not move out until February 1989. [Helen Hembree Depo at 7]. The benefits were terminated in January 1989.

**3.** Deposition testimony indicates that Mr. and Mrs. Hembree remain separated. [Hoke Hembree Depo at 5; Helen Hembree Depo at 9].

**4.** The statute provides: "A civil action may be brought—to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B).

and affirmed its earlier decision terminating benefits: "[Hembree] was advised to stay as active as he can and to continue working." [Pl.Ex. D]. Plaintiff contends that when read in its entirety Dr. Richardson's letter did not support termination of benefits.

In its motion for summary judgment, Provident argues that Plaintiff's claim for benefits under the group policy is barred by the three-year contractual period of limitations. The policy provides:

**Legal Actions**

No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of total disability has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

[Policy Claim Provisions, Def.Ex. 3]. Because Hembree's benefits were terminated in January, 1989, and Plaintiff did not file the instant action until July, 1999, Provident contends it is entitled to summary judgment on the claim for benefits since Hembree failed to bring this action against Provident within the three-year statute of limitations.

The United States Court of Appeals for the Eleventh Circuit has held that federal courts should borrow "the most closely analogous state limitations period" with regard to claims brought under 29 U.S.C. § 1132(a)(1)(B) because ERISA does not provide a statute of limitations for suits brought under this provision. *See Northlake Regional Medical Center v. Waffle House Sys. Employee Benefit Plan,* 160 F.3d 1301, 1302 (11th Cir.1998). "Choosing which state statute to borrow is unnecessary, however, where the parties have contractually agreed upon a limitations period." *Id.*

Contractual limitations periods on ERISA actions may be enforced as long as they are reasonable. *See id.* at 1303;

*Doe v. Blue Cross & Blue Shield,* 112 F.3d 869, 874 (7th Cir.1997). In *Northlake,* the Eleventh Circuit reasoned that a 90–day contractual limitations period was reasonable under the facts and circumstances of that case. *See Northlake,* 160 F.3d at 1302. This court finds that the three-year contractual statute of limitations in the Policy is reasonable and thus enforceable. *Accord Moore v. Berg Enterprises,* 201 F.3d 448 (10th Cir.1999) (unpublished disposition) (affirming district court's determination that a three-year contractual statute of limitations was reasonable); *Blaske v. UNUM Life Insurance Co.,* 131 F.3d 763 (8th Cir.1997) (same); *Ingram v. Travelers Ins. Co.,* 897 F.Supp. 1160, 1165 (N.D.Ind.1995), *aff'd,* 78 F.3d 586 (7th Cir. 1996) (holding a three-year contractual limitation period was a reasonably sufficient time within which a plaintiff could have contested the denial of his claim for benefits); *McIntyre v. Sears Group Long Term Disability Ins. Plan,* No. 1:91–CV–1502–JEC (N.D.Ga., December 29, 1992) (same).

Contractual limitations serve valid purposes. "Memories fade; witnesses move from their jobs and homes; documents may be misplaced or destroyed. Claims for disability benefits present particularly compelling reasons for enforcing reasonable limitations periods." *Ferguson v. Aetna Life Ins. Co.,* 2000 WL 263698, at *6 (N.D.Ill. Feb.28, 2000). This is especially true here as Provident destroyed the records pertaining to Hembree's claim seven years after the termination and those who may have administered the claim are no longer there. [Randza Depo. at 10, 18]. The court sympathizes with Plaintiff's situation but had the claim for benefits been filed within the three-year period, Provident would have been better equipped to determine whether, in fact, Hembree was entitled to benefits. As such, the court finds Plaintiff's claim for disability benefits is time barred by the contractual limitation period. *Accord Bailey v. Plan Administrator for Allstate Ins.,* 1998 WL 413485

(N.D.Ill. July 17, 1998) (holding that ERISA claim brought ten years after cause of action accrued by termination of benefits was time barred by three-year contractual limitation period despite the fact that defendant may have improperly discontinued benefits).

Plaintiff urges this court to adopt Georgia's equitable tolling provision for statutes of limitations and argues that Hembree's mental incompetence, during the period that the benefits were terminated and through today, should toll the contractual period of limitations.[5] Plaintiff relies on *Clarke v. Unum Life Ins. Co.*, 14 F.Supp.2d 1351 (S.D.Ga.1998) and *Branch v. Bernd Co.*, 955 F.2d 1574 (11th Cir.1992) in advocating her position. In *Clarke*, the district court relied on Georgia common law in concluding that the plaintiff's mental illness (the same illness that provided the basis for her claim for disability) was responsible for plaintiff's failure to give proper proof of disability to her insurer. *See Clarke*, 14 F.Supp.2d at 1355. The court held that there was sufficient evidence which raised a genuine issue of material fact as to whether plaintiff's failure to provide reasonable notice was excused because of mental illness and denied a motion for summary judgment on the basis that plaintiff failed to provide notice of her condition in accordance with the terms of the contract. *See id.* at 1354–1356.

The facts in *Clarke* somewhat resemble Hembree's situation in that Plaintiff argues Hembree did not file proof of disability according to the terms of the policy because of his mental incompetence. However, in *Clarke* there was no issue

regarding a contractual limitation which limited the time in which the insured could bring a legal action. *Clarke* dealt solely with the merits of the plaintiff's claim for benefits—whether the insured's mental illness prevented her from making a timely claim for disability. As such, the reasoning in *Clarke* would be more applicable to the merits of Hembree's claim, whether his alleged mental incompetence excused him from submitting the proof of disability, not to the contractual statute of limitations issue currently before the court.

Nor is Plaintiff's second case, *Bernd*, instructive on this matter. In that case, the Eleventh Circuit held that "the period during which COBRA, [the Consolidated Omnibus Budget Reconciliation Act of 1985], allows a beneficiary to elect to continue coverage under a health plan is tolled by the beneficiary's incapacitation during that election period." *Bernd*, 955 F.2d at 1576. It did not address equitable tolling concerning the ERISA provisions at issue in the instant case.

In its motion for summary judgment, Provident argues that in ERISA benefit cases, "where the Court enforces a contractual period of limitations rather than adopting a state statute of limitations, the contractual limitations period is not subject to state law tolling principles." [Def. Motion for Summary Judgment at 14]. Additionally, Provident disputes the allegation of Hembree's mental incompetence.

The Eleventh Circuit has not addressed the issue of whether contractual limitations on the time within which an insured may bring an ERISA claim to

---

5. Plaintiff argues this court should adopt Georgia's statutory provision for the equitable tolling of a limitations period based on mental incompetence. [Pl. Response to Mot. Summary Judgment at 14]. Because Plaintiff does not specifically seek to invoke the federal equitable tolling doctrine, this court will not address whether the federal equitable tolling doctrine applies to ERISA claims or to contractual limitations periods or whether mental illness can toll a limitations period under this doctrine. *See e.g. Ebrahimi v. E.F. Hutton &*

*Co.*, 852 F.2d 516, 520 (10th Cir.1988) (holding that when a cause of action is based on federal law, federal law should govern determination of when a claim accrued and whether the statute of limitations had run, even when borrowing the actual limitations period from state statute; "[u]nder the doctrine of federal equitable tolling, courts generally have not permitted mental illness, even where rising to the level of insanity, to delay the statute of limitations from running").

recover benefits may be equitably tolled as a result of the insured's mental incompetence. As such, the undersigned declines to apply equitable tolling principles to the instant action and finds the action time barred for the following reasons.

■ First, the court finds persuasive the reasoning of other federal courts, which have held that equitable tolling provisions, which stem from state law, are not applicable when a contractual limitation is enforced. *See Allen v. Unionmutual Stock Life Ins.*, 989 F.Supp. 961, 966 (S.D.Ohio 1997) ("[T]his Court has followed the contractual limitations period and will borrow neither the state statute of limitations nor its concomitant tolling provisions.... This court declines to engraft a state tolling provision onto a contractual limitations period."); *Chilcote v. Blue Cross & Blue Shield of Wisconsin*, 841 F.Supp. 877, 881 (E.D.Wis.1993) ("[T]he Court has not borrowed a state statute of limitations in this case, so Wisconsin's tolling provisions will not be borrowed either.")

■ Moreover, even if this Court were to apply Georgia's equitable tolling provision to this case, the evidence does not show that Hembree was legally incompetent due to mental illness as required by the statute. O.C.G.A. § 9–3–90(a) provides that "persons who are legally incompetent because of mental retardation or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons." *Id.* " 'The test is one of capacity—whether the individual, being of unsound mind, could not manage the ordinary affairs of [his] life.' " *Branch v. Carr*, 196 Ga.App. 534, 534–5, 396 S.E.2d 276 (Ga.App.1990) (citations omitted) (holding that where allegations of mental incapacity, for tolling purposes, were pierced by deposition testimony, the plaintiff then was required to " 'come forward' with any evidence contradicting her deposition testimony that, at all relevant times, she has been incapable of managing her own affairs.")

Furthermore, Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact that Hembree has been or continues to be mentally incompetent. Mr. Hembree's deposition testimony indicates he manages his own affairs and has a knowledge of his legal rights. The deposition testimony of both Mr. and Mrs. Hembree shows that Mr. Hembree: inquired about and filled out forms for early retirement with Georgia Power in February and March of 1989; signed and submitted two forms to the Social Security Administration in order to continue receiving social security benefits in April 1989; applied for and was granted a home equity loan together with Helen Hembree from which Mr. Hembree has taken approximately twenty-five advances between 1989–2000; always renews his driver's license when necessary; maintains an independent household since separating from his wife and manages his affairs without her help including paying his electric and telephone bills by check; was recently elected for a second term as a judge in his chapter of the American Legion; submitted claims on his car insurance and homeowner's insurance in the past two years; purchased a car and changed the title on it in 1999; and pled guilty to a DUI charge and completed DUI school last year. [Hoke Hembree Depo. at 15, 31, 58–9, 62, 67–70, 81; Hoke Hembree Depo. Ex. 1–4, 8–11; Helen Hembree Depo. at 46, 65, 84]. In fact Hembree disputed the notion that he could not manage his affairs during his deposition. [Hoke Hembree Depo at 84–85].

Additionally, Mr. and Mrs. Hembree adopted two of their grandchildren in 1994. [Helen Hembree Depo. at 8; Certificate of Clerk of Douglasville Superior Court, Def. Ex. 11]. In connection with this adoption, Dr. Cibik wrote a letter on March 8, 1993, stating: "At this time I find no physical, mental or medical reason that Mr. Hembree cannot assume the care of children."

[Def.Ex. 12]. Finally, while not dispositive of the issue of mental incompetence, the evidence shows that Hembree has never been declared legally incompetent nor has his family sought appointment of a guardian for him. [Hoke Hembree Depo. at 30–31; Helen Hembree Depo at 84].

In contrast, the only sworn testimony submitted with respect to Hembree's mental incompetence is contained in Plaintiff's deposition testimony, where she makes bare allegations that Hembree was mentally incompetent to handle his business affairs from January 1989 through and including the present time, and that during the marriage she managed all of Hembree's financial, legal, and business matters as he did not understand those matters. In response to the motion for summary judgment, Plaintiff submitted no affidavits. Aside from her own deposition testimony, Plaintiff relies on two unsworn letters from doctors alleging Hembree was mentally incompetent and unable to handle his business affairs in January 1989. [Plaintiff's Ex. C].

"[E]stablishing a genuine issue of material fact requires more than effusive rhetoric and optimistic surmise." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997). If the nonmoving party's response to the summary judgment motion consists of nothing more than mere conclusory allegations, then the court must enter summary judgment in the moving party's favor. *See Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir.1989). Given the deposition testimony which pierces the allegations in the Complaint of Hembree's mental incompetence, Plaintiff has failed to create a genuine issue of material fact concerning Hembree's mental incompetence such that equitable tolling of the contractual statute of limitations might be warranted. *Accord Ferguson,* 2000 WL 263698 at *5–6 (declining to equitably toll an ERISA claim barred by a three-year contractual limitations period because, despite impaired judgment, the insured "was able to exercise his legal rights and duties in other contexts," namely conducting banking transactions, renewing his drivers license, communicating with creditors and interviewing for employment positions). Therefore, this court finds that Georgia's equitable tolling provision is not applicable to the instant action, and Plaintiff's claim for benefits is time-barred.

Lastly, with respect to the claim for benefits, Plaintiff argues even if the three-year contractual period is not tolled, Hembree would still be entitled to approximately eighteen months of benefits. Plaintiff relies on *Nikaido v. Centennial Life Ins. Co.,* 42 F.3d 557 (9th Cir.1994) in crafting the argument that an ERISA cause of action accrues on a rolling basis. Under this theory, there is a continuing violation each time benefits were due to be paid but were not paid. Thus Plaintiff submits that the claim for benefits is not time-barred with respect to the three years directly preceding the filing of the Complaint through the end of the maximum benefit period—June 28, 1996 through January 20, 1998.

■■■ Summary judgment is warranted with respect to this claim as well. Plaintiff's ERISA cause of action accrued either at the time benefits were actually denied or terminated or when the insured became aware of the facts necessary to make out a claim. *See Burks v. American Cast Iron Pipe Co.,* 212 F.3d 1333, 1336 (11th Cir. 2000). Hence Plaintiff's ERISA cause action accrued in January 1989 when Hembree's benefits were terminated. Furthermore, the Ninth Circuit Court of Appeals recently overruled *Nikaido,* the sole case on which Plaintiff relies. *See Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 649 (9th Cir.2000). It held that the " 'rolling' accrual rule is no longer the law of the circuit" and adopted the position that "under federal law, an ERISA cause of action accrues either at the time benefits are actually denied ... or when the insured has reason to know that the claim has been denied." *Id.* Accordingly, Defendant's mo-

tion for summary judgment with respect to the claim for benefits is hereby granted.

The court will now address Plaintiff's claim for breach of fiduciary duty. Although not expressly averred in the Complaint, the court assumes that this claim was brought pursuant to 29 U.S.C. § 1132(a)(3), the appropriate statutory mechanism to bring a breach of fiduciary duty claim under ERISA.[6] Plaintiff contends that Provident breached its fiduciary duty in administering Hembree's claim when it terminated his benefits based on a single, allegedly erroneous clause from one doctor's note without investigating further, especially in light of Hembree's alleged mental incompetence.

Provident argues that because 29 U.S.C. § 1132(a)(1)(B) provides an express statutory remedy for Hembree's injury, the breach of fiduciary duty claim is duplicative and inappropriate. This court agrees that equitable relief is not appropriate where 29 U.S.C. § 1132(a)(1)(B) provides a remedy for the injury suffered.

In *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the United States Supreme Court interpreted 29 U.S.C. § 1132(a)(3) and limited the statute's applicability to plaintiffs who have no adequate remedy otherwise furnished by ERISA. *See id.* at 515, 116 S.Ct. 1065. The Court stated:

> The statute authorizes "appropriate" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Id.* (internal citations omitted). The plaintiffs in *Varity* could not proceed under any other subsection in 29 U.S.C. § 1132, as they were no longer members of the Plan at issue. In contrast, Hembree has a cause of action under § 1132(a)(1)(B) for termination of benefits. Therefore, under existing law, he cannot also seek equitable relief under 29 U.S.C. § 1132(a)(3). *See Varity*, 516 U .S. at 515, 116 S.Ct. 1065; *Katz v. Comprehensive Plan of Group Insurance*, 197 F.3d 1084, 1088–89 (11th Cir. 1999); *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1237 n. 1 (11th Cir.1999); *see also Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir.1998).

Plaintiff submits that "[u]nder 29 U.S.C. § 1132(a)(3), the Court is specifically authorized to provide appropriate equitable relief when justified." [Pl. Brief in Response to Def. Motion for Summary Judgment]. Plaintiff urges this court to adopt a reading of 29 U.S.C. § 1132(a)(3), in which relief can be authorized under the "other appropriate equitable relief" language in the situation where the legal remedy under 29 U.S.C. § 1132(a)(1)(B) is not sustainable. Plaintiff contends equitable relief would be appropriate here, where the contractual statute of limitations precludes relief under 29 U.S.C. 1132(a)(1)(B). Plaintiff argues that equitable relief is further justified because Hembree's benefits were wrongly terminated based on an alleged egregious error and because Plaintiff was "legally incompetent and not able to handle his affairs." [*Id.*].

■ However, this argument has been foreclosed by Eleventh Circuit precedent. In *Katz*, the Eleventh Circuit stated that "the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudi-

---

6. The statute provides: "A civil action may be brought—(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of this plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;" 29 U.S.C. § 1132(a)(3)

cation in one's favor." *Id.* at 1089; *accord Tolson v. Avondale Indus.*, 141 F.3d 604, 610 (5th Cir.1998) (holding that when the plaintiff had a right to directly sue the Plans under section 1132(a)(1), it was inappropriate for the court to fashion further equitable relief under section 1132(a)(3), even when the plaintiff did not prevail on his claim under section 1132(a)(1)). The central inquiry involves whether Congress has provided an adequate remedy for the injury alleged elsewhere in the ERISA statutory framework. Here Congress has provided an express legal remedy for challenging termination of benefits. As such, the court is constrained in its ability to grant equitable relief.

Further, assuming, arguendo, that equitable relief was available in this situation, Plaintiff's claim would be time-barred. ERISA sets forth a specific six-year statute of limitations for bringing an action alleging breach of fiduciary duty.[7] *See* 29 U.S.C. § 1113. Provident terminated disability benefits in January 1989. Hence Plaintiff had until January 1995 to bring a claim for breach of fiduciary duty.

Finally Plaintiff contends that any statute of limitations on the breach of fiduciary duty claim should be tolled as a result of Hembree's mental incompetence. However, absent direction from the Eleventh Circuit, this court declines to engraft an equitable tolling provision onto the federal statute.[8] Therefore, with respect to Plaintiff's claim for breach of fiduciary duty, Provident's motion for summary judgment is granted.

Accordingly, Defendant's Motion for Summary Judgment [# 9] is hereby GRANTED.

---

7. The statute provides:
   No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
   (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
   (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such a breach or violation.
29 U.S.C. § 1113.

8. Again, the notion of equitable tolling would be of no avail to Mr. Hembree. For the reasons stated *supra* with respect to the claim for benefits, this court finds that there is no genuine issue of material fact concerning Hembree's mental incompetence sufficient to survive a motion for summary judgment.